IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–02916–WJM-KMT

MARK B. FERGUSON,

 Plaintiff,

v.

BRIAN WEBSTER, P.A., in his individual capacity as Physician Assistant,
BARRY GOLDSMITH, M.D., in his individual capacity as Physician, and
BEV DOWIS, in her individual capacity as Health Services Administrator,

 Defendants.

## ORDER

This matter is before the court on "Plaintiff's Motion to Exclude Expert Testimony of Paula Frantz, M.D. Pursuant to Rule 702" (Doc. No. 32 [Mot.], filed January 31, 2011). Defendants Webster and Dowis filed their response on March 15, 2011 (Doc. No. 56 [Resp.]), and Plaintiff filed his reply on March 30, 2011 (Doc. No. 61 [Reply]). This court held a hearing regarding the Motion on February 26, 2011, at which no witness testimony was provided.

This motion was referred by District Judge William J. Martínez on March 9, 2011. (Doc. No. 54.) At the hearing in this matter, this court advised the parties it would issue a recommendation to Judge Martínez. However, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b), because this court has not made a ruling which finally resolves a party's claim or defense, this court has authority to issue an order regarding the Motion.

## I. BACKGROUND

In his Complaint, Plaintiff asserts claims related to the alleged denial of medical treatment by a qualified provider for sudden onset of severe pain and paralysis on one side of Plaintiff's body while he was incarcerated at Sterling Correctional Facility. (*See* Compl.) Plaintiff alleges that Defendant Webster, a physician's assistant (PA), was not qualified to diagnose and treat Plaintiff's illness, but that he nonetheless failed to contact a physician or refer Plaintiff to a neurologist for five months, instead accusing Plaintiff of "malingering." (*Id.*, ¶ 29 (a), (b).) Plaintiff alleges the delay in diagnosis and in treatment caused him pain and a worsening of his condition. (*Id.*, ¶ 31.)

Defendants endorsed the Colorado Department of Corrections (CDOC) Chief Medical Officer, Paula Frantz, M.D., to testify regarding Plaintiff's medical condition and the medical treatment received by Plaintiff. (Mot., Ex. 4.) Dr. Frantz is board certified in family practice medicine. (*Id.*, Ex. 5.) Plaintiff seeks an order excluding the testimony of Dr. Frantz pertaining to the diagnosis of multiple sclerosis, Plaintiff's type of MS and disease course, and causation of Plaintiff's injuries. (Mot. at 1, 18.)

## II. LAW

The admission of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

>methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993), the court performs an important "gatekeeping role in assessing scientific evidence." *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1203–04 (10th Cir.2002) (citations omitted). In that role, a court must assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).

In determining whether to admit expert opinion evidence, the court performs a two-step analysis. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). First, the court has to determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. Fed. R. Evid. 702; *Bado-Santana v. Ford Motor Co.*, 482 F.Supp.2d 192, 196 (D.P.R.2007) (stating that an expert may qualify in a particular field ". . . through any one or more of the five bases enumerated in Rule 702-knowledge, skill, experience, training, or education."). Second, the court determines whether the proffered evidence is both "reliable" and "relevant." *Hollander*, 289 F.3d at 1204 (citing *Daubert*, 509 U.S. at 589). Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (citing *Daubert*, 509 U.S. at 592–93). Relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* (citing *Daubert*, 509 U.S. at 593).

The expert's proffered testimony must be within the scope of her established expertise. *Ralston*, 275 F.3d at 970. Expertise in a specialized area directly related to the issue in question is generally not required as long the expert "stays within the reasonable confines of [her] subject area." *Id.* If an expert stays within the reasonable confines of [her] subject area, [her] lack of specialization will affect only the weight to be given to that opinion. *Id.*

The standard for qualifying expert witnesses is to be construed and applied liberally. *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1084 (D. Colo. 2006) (citing *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995)). A doctor's expertise need not be acquired by formal education in the precise area in issue; practical experience can also support expertise. *United States v. Charley*, 189 F.3d 1251, 1263 (10th Cir. 1999). However, merely being a physician is not sufficient to qualify an expert to testify; the witness must have expertise reasonably related to the issue. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).

### III.   ANALYSIS

Plaintiff moves to exclude Dr. Frantz's proffered expert opinion testimony regarding the signs, symptoms and diagnosis of multiple sclerosis (MS), and to the cause of Plaintiff's injuries. (Mot. at 9.) Dr. Frantz authored a written report expressing opinions as to the care and treatment of Plaintiff. (*See id.*, Ex. 6.) Plaintiff argues that the following opinions offered by Dr. Frantz are outside her area of expertise or irrelevant:

(1)   an electromyogram led the neurologist to recommend Plaintiff undergo an MRI;

(2) multiple sclerosis is a disease of diverse presentation and diagnosis can be difficult;
(3) the findings that are highly characteristic of MS are pervasive throughout the prison population, making the diagnosis of MS difficult;
(4) the McDonald criteria for the diagnosis of MS made clear the need to demonstrate dissemination of clinical events and lesions in space and time;
(5) a standard criteria for MS is the demonstration of two or more clinically distinct episodes of central nervous system dysfunction with at least a partial resolution but Plaintiff had only one episode of central nervous system dysfunction during the time Defendant Webster evaluated him;
(6) a diagnosis of MS by Defendant Webster was "very difficult";
(7) a study published in Neurology showed the median time from onset of symptoms to diagnosis to be two years for Caucasian Americans;
(8) given the patient's physical exam and presentment in December 2007 and February 2008, it would be "unusual" to pursue further diagnostic workup at that time; and
(9) Defendant Webster made appropriate "assessments and diagnoses" based on the manner in which the patient presented at the examinations.

(Mot., ¶¶ 8.)

Plaintiff argues that Dr. Frantz is not qualified to testify, due to her training and experience as a family practitioner and as the chief medical officer in the prison system, regarding the diagnosis of MS. Plaintiff argues that Dr. Frantz has not treated or diagnosed MS since the 1990s; has not kept up with the training required of a neurologist; and that she is not qualified to make definitive decisions about the treatment of MS.

Defendant argues that Dr. Frantz has been qualified as an expert in United States District Court in the areas of family practice and corrections healthcare. (Resp., ¶ 10.) Defendant argues that, as such, Dr. Frantz is highly qualified to testify regarding the diagnoses and treatment provided by prison medical providers in the prison context. (*Id.*)

At the hearing, this court questioned Plaintiff's counsel about Dr. Frantz's unique qualifications, as a family practitioner and corrections healthcare expert, to opine whether the actions taken by Defendant Webster, in the face of the symptoms presented to him at the time he saw Plaintiff, were appropriate and whether Defendant Webster took reasonable measures to abate risk to the plaintiff. As to Dr. Frantz's opinions 1 through 3, 5 through 6, 8, and 9 listed above, Plaintiff's counsel agreed that, if Dr. Frantz's opinions are limited to this context–and not to what a neurologist would have done if presented with the same symptoms–she would not object and Dr. Frantz's testimony would be appropriate. In response, Defendants' counsel agreed to limit Dr. Frantz's opinions to her expertise as a family practitioner and corrections healthcare expert. Additionally, as to Dr. Frantz's opinion number 1, Defendant agreed to limit Dr. Frantz's testimony to the fact that, as noted in the medical records, after an electromyegram a neurologist recommended an MRI. Dr. Frantz will not testify as to what "led" the neurologist to order the MRI or as to what was in the mind of the neurologist who recommended an MRI.

Plaintiff objects to Dr. Frantz's opinion 4 regarding the McDonald criteria for the diagnosis of MS. When questioned by this court, Defendant's counsel argued the study is relevant to show that Defendant Webster needed to see Plaintiff more than once before a red flag was raised to alert Defendant Webster that Plaintiff's symptoms had progressed to a point where additional testing was necessary. Plaintiff argues that the McDonald criteria are irrelevant because they are specifically for the diagnosis of MS, that Defendant Webster was not qualified to make such a diagnosis, that the records show Defendant Webster never suspected the plaintiff of having MS, and Defendant Webster never considered the criteria. The court finds, however,

that Dr. Frantz is uniquely qualified to opine whether Defendant Webster acted appropriately given the symptoms Plaintiff presented at the times he saw Defendant Webster.  In forming this opinion, Dr. Frantz, a family practitioner and corrections healthcare expert, may rely on published criteria that there is a need to demonstrate certain symptomology before a family physician or PA would even suspect MS, and whether Defendant Webster, based on the symptoms confronting him, acted appropriately.  The court finds Dr. Frantz's opinion in this regard is appropriate if it is limited in this manner.

Finally, Plaintiff objects to Dr. Frantz's opinion 7 because the study referred to is irrelevant because the study covered parameters that are not relevant to this case.  Plaintiff also argues a neurologist is the proper expert to testify as to this study.  This court expressed concern that this study, which shows the median time from onset of symptoms to diagnosis is two years for Caucasian Americans, does not appear to be anything Dr. Frantz would have looked at to determine whether Defendant Webster took appropriate actions when he was presented with a set of symptoms.  Defendant concedes that opinion 7 is outside the scope of Dr. Frantz's specialty and agrees to exclude this opinion.

Accordingly, it is

**ORDERED** that "Plaintiff's Motion to Exclude Expert Testimony of Paula Frantz, M.D. Pursuant to Rule 702" (Doc. No. 32) is GRANTED in part and DENIED in part, as follows:

1. As to Dr. Frantz's opinions 1 through 3, 5 through 6, 8, and 9, Dr. Frantz's opinions will be limited to her training and experience as a family practitioner and corrections healthcare expert, to opine whether what Defendant Webster, in the

       face of the symptoms presented to him at the time he saw Plaintiff, took appropriate action and whether Defendant Webster took reasonable measures to abate the risk to Plaintiff. Dr. Frantz may not testify as to what a neurologist would have done if presented with the same symptoms.

2.     As to Dr. Frantz's opinion number 1, Dr. Frantz may testify to the fact that, as noted in the medical records, after an electromyegram had been performed on Plaintiff, a neurologist recommended an MRI. Dr. Frantz may not testify as to what "led" the neurologist to order the MRI or as to what was in the mind of the neurologist.

3.     As to Dr. Frantz's opinion number 4, Dr. Frantz may opine whether Defendant Webster acted appropriately given the symptoms Plaintiff presented at the times he saw Defendant Webster. Dr. Frantz may rely on the McDonald criteria in opining whether Defendant Webster, based on the symptoms confronting him, acted appropriately.

4.     Dr. Frantz's opinion 7, with the agreement of Defendants, is excluded.

Dated this May 4, 2011.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge