IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 09-cv-02916-WJM-KMT

MARK B. FERGUSON,

    Plaintiff,

v.

BRIAN WEBSTER, P.A., in his individual capacity as Physician Assistant, and
BEV DOWIS, in her individual capacity as Health Services Administrator,

    Defendants.

---

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment, ECF No. 34, filed on January 31, 2011. For the following reasons, this motion is DENIED.

## INTRODUCTION

This is a prisoner civil rights lawsuit. Plaintiff Mark Ferguson ("Plaintiff") alleges that Defendants Brian Webster, P.A. ("Webster") and Bev Dowis ("Dowis") violated his Eighth Amendment right to be free from cruel and unusual punishment. (Compl., ECF No. 1 at 6.) Plaintiff brings this claim for relief against Defendants in their individual capacities under 42 U.S.C. § 1983 ("§ 1983").[1]

---

[1] The Court previously dismissed putative Defendant Barry Goldsmith, M.D. on September 9, 2011 in its Order on Order to Show Cause, ECF No. 82, pursuant to Plaintiff's Response to the Order to Show Cause, ECF No. 80.

**BACKGROUND**

**I.      Factual History**

Unless otherwise noted, the following facts are not in material dispute. During the relevant time, Plaintiff was an inmate housed at the Sterling Correctional Facility ("SCF"). Webster was a Physicians Assistant at SCF and Dowis was the Health Services Administrator. (ECF No. 34 at 2 ¶ 1.) Plaintiff was housed at SCF from July 3, 2007 to May 6, 2008 with a brief time at the Larimer County Jail between January 25, 2008 and February 6, 2008 to make court appearances. (*Id.* at 2 ¶ 2, 4 ¶ 18.)

As Health Services Administrator, Dowis supervises, consults and educates staff regarding clinical standards and administrative regulations. (*Id.* at 2 ¶ 3.) Among other duties, Dowis was to ensure inmates had unimpeded access to medical services. (ECF No. 57 at 2 ¶ 3.)

On December 4, 2007, Plaintiff submitted a "kite"[2] asking for medical attention due to concern about his left arm and leg and indicating that he felt paralyzed. (*Id.* at 3 ¶ 12.) Plaintiff submitted further kites on December 6 and 11, 2007 related to the pain and weakness in his left arm and leg. (*Id.*; ECF No. 34 at 3 ¶ 12.) In addition to stating that he felt paralyzed, Plaintiff raised the concern on December 11 that he had suffered a stroke, which resulted in his left arm and leg issues. (Kite Log, ECF No. 57-2 at 2.)

On December 14, 2007, Webster examined Plaintiff. (ECF No. 34 at 3 ¶ 12.) Webster documented the examination as essentially normal with some muscle

---

[2] A "kite" is a form used by inmates to request medical attention. (ECF No. 34 at 2-3 ¶ 5.)

tenderness and recommended Plaintiff limit exercise. (Webster Dep., ECF No. 34-5 at 54:4-9.) Plaintiff, however, alleges that he had to be taken to this appointment in a wheel chair, and that he could hardly move his left leg during the examination. (Ferguson Aff., ECF NO. 57-2 at 1-2 ¶ 5.) Plaintiff further alleges that he informed Webster that he had not been exercising, so that was not the cause of his complaints. (*Id.*)

On January 16, 2008, Plaintiff submitted another kite with a similar complaint of pain and weakness on his left side. (ECF No. 34 at 4 ¶ 16.) Plaintiff was called to the clinic on January 19, but refused to go because he did not want to be seen by a nurse. (*Id.*; ECF No. 34-4 at 17.)

On January 24, 2008, during a routine mental health check, the psychiatrist noted a left foot drop and referred Plaintiff for a medical examination. (ECF No. 34 at 4 ¶ 17; ECF No. 34-4 at 18; ECF No. 57 at 5 ¶ 17.)

After returning from the Larimer County Jail, Plaintiff saw Webster on February 8, 2008. (ECF No. 34 at 5 ¶ 20.) Webster documented that Plaintiff stated his gait was improving. (ECF No. 34-4 at 21.) Webster found the pain was more of a stiffness, and prescribed an anti-inflammatory medication. (*Id.*, ECF No. 34 at 5 ¶ 21.) Plaintiff, however, argues that he did not report an improved gait but that Plaintiff instead described pain from the foot through the knee on the left side. (ECF No. 57 at 6 ¶ 21.) Plaintiff argues that his complaints were ignored during this examination.

On February 12, 2008 Plaintiff again submitted a kite, requesting medical attention due to a possible stroke. (ECF No. 34 at 5 ¶ 22.) On February 19, 2008, however, when Plaintiff was scheduled for an examination, Plaintiff once again refused

to visit the clinic because he wanted to see a physician. (ECF No. 57 at 6 ¶ 22.)

During an examination on March 25, 2008, Webster measured Plaintiff's left thigh, and noted that the left thigh was smaller than the right. (ECF No. 34 at 5-6 ¶¶ 24-25.) Webster ordered x-rays of the lumbar spine and an electromyogram ("EMG") due to decreased dorsiflexion on Plaintiff's left side and because of the measurement discrepancy. (*Id.* at 6 ¶ 25-26.) Plaintiff did not see Weber further. (*Id.* at ¶ 27.)

Following the x-rays and EMG, Plaintiff was seen by a neurologist and others who ultimately diagnosed Plaintiff with multiple sclerosis ("MS"). (*Id.* at 6-9.) Plaintiff has since received treatment and physical therapy for MS. (*Id.*)

**II. Procedural History**

On December 11, 2009, Plaintiff filed this action. (ECF No. 1.) Defendants subsequently filed an answer to the complaint on February 22, 2010. (ECF No. 6.) On January 31, 2011 Defendants filed the present Motion for Summary Judgment. (ECF No. 34.)

**STANDARD OF REVIEW**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). In contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence

for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).

The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## DISCUSSION

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Howard v.. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle* , 429 U.S. at

104–05 (internal citation omitted).

The elementary principles of dignity, civility, humanity, and decency "establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103 (internal quotation and citation omitted).

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted); *see also Self*, 439 F.3d at 1230-31. In other words, the plaintiff must establish that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by

failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted). "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference.

With regard to the subjective component, the question for consideration by the Court is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir.2009) (quoting *Mata*, 427 F.3d at 753). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755; *see also Dougherty v. Kansas*, No. 08–3066, 2008 WL 2906505, at *3 (D.Kan. July 24, 2008) (unpublished) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm). "[P]rison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844–45). "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly or recklessly declined to act." *Howard*, 534 F.3d at 1239-40 (citation and modification omitted).

***Defendant Webster***

-7-

The Court finds that summary judgment is not appropriate on Plaintiff's §1983 claim against Webster. There is some evidence that Webster knew of Plaintiff's allegations of paralysis and stroke. (Kite Log. ECF No. 57-2 at 2.) This evidence raises the question of whether Webster should have referred Plaintiff to a physician for diagnosis and treatment. Further, on December 14, 2007, Plaintiff alleges that Webster observed Plaintiff entering the clinic in a wheelchair, having difficulty walking, flexing his left foot, and holding objects in his left hand. (Ferguson Aff., ECF No. 57-2 at 12-13 ¶ 5.) Plaintiff contends that he had not been exercising recently and had no intention of doing so with sharp pains shooting down the left side of his body. (*Id.*) Weber's medical report for that date, however, indicates that Plaintiff stated he regularly performs crunches, burpee's, push-ups, pull-ups, and squats and that Plaintiff thought he had pulled a muscle to cause the pain in his left leg. (ECF No. 34-4 at 16.) On January 24, 2008, during a routine mental health exam, Plaintiff complained of pain and numbness on his left side. (ECF No. 34-4 at 18.) The doctor observed Plaintiff's foot dropping when he walked, and noted that Plaintiff could not raise his left foot as high as his right. (*Id.*) On February 8, 2008, Plaintiff once again saw Webster and complained about his left side. (Ferguson Aff., ECF No. 57-2 at 14 ¶ 12.) Webster's notes from the examination, however, state that Plaintiff reported that he is improving and that the pain in his left leg is more a stiffness in the Achilles tendon instead of a pain. (ECF No. 34-4 at 21.)

Given all this conflicting evidence the Court finds that there is a genuine dispute as to Webster's knowledge of Plaintiff's symptoms, what those symptoms were, the veracity of Plaintiff's complaints while being examined by Webster, and the level of pain

being experienced by Plaintiff. In these circumstances, summary disposition of Plaintiff's Eighth Amendment claim against Webster is not appropriate and will be denied.

***Defendant Dowis***

A supervisor is liable under § 1983 only if an "'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Meade v. Grubb*, 841 F.2d 1512, 1527 (10th Cir. 1988) (citation and quotations omitted). An affirmative link may be satisfied if "a supervisor has established or utilized an unconstitutional policy or custom." *Id.* at 1528. Administrators of penal facilities may be held liable "where there has been a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Id.* In order to properly supervise and train, an administrator normally must issue clear written policies and then teach subordinates how to implement them. *See Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1239 (10th Cir. 1999). Officials may be held liable when their own acts, including their policies, practices and procedures, violate an inmate's Eighth Amendment rights, even if the offending policy, practice, or procedure is unwritten. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1499 (10th Cir. 1990).

Plaintiff alleges that Dowis failed to properly supervise and train staff regarding providing inmates access to proper medical services. Plaintiff alleges that although DOC policy and procedure required that every request for emergency medical care be evaluated by a provider in the clinic, Dowis instead allowed nurses, and not physicians assistants, to rule out serious illnesses such as stroke by looking through a slot in a

prison door. (ECF No. 57 at 19.) Dowis testified that after receiving a kite, it was not uncommon for a nurse to stand at the door of an inmate, talk to him, reassure the inmate that he would be seen soon, and determine, based on the inmate's movement and handling of medicine, whether there was an immediate need for medical assistance. (Dowis Dep., ECF No. 57-1 at 72:12-19.)

On December 11, 2007, Plaintiff submitted a kite stating that he believed he had had a stroke and needed to be seen by a doctor. (*See* Dowis Dep., ECF No. 57-1 at 86:5-13.) The kite indicated that Plaintiff believed the request was urgent. (*Id.*) Dowis testified that Plaintiff was likely evaluated by a nurse on that date. (*Id.* at 86:18-21.) Despite allegations of stroke, Plaintiff was not seen by Webster until December 14, 2007. In the Court's view, this evidence creates a genuine issue of material fact as to whether Dowis failed reasonably to supervise and train her staff on the proper provision of medical services to inmates. The Court finds that, under these circumstances, summary disposition of Plaintiff's Eighth Amendment claim against Dowis is not appropriate and will also be denied.

## CONCLUSION

For the foregoing reasons, it is therefore ORDERED that Defendants' Motion for Summary Judgment, ECF No. 34, is DENIED in its entirety.

Dated this 22nd day of September, 2011.

BY THE COURT:

William J. Martínez
United States District Judge