**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-02916-WJM-KMT

MARK B. FERGUSON,

     Plaintiff,

v.

BRIAN WEBSTER, P.A., in his individual capacity as Physician Assistant, and
BEV DOWIS, in her individual capacity as Health Services Administrator,

     Defendants.

---

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

     This matter is before the Court on Defendant Brian Webster, P.A. ("Webster")

and Defendant Bev Dowis ("Dowis") joint Motions for Summary Judgment ("Motion").

(ECF No. 34.)  Plaintiff Mark Ferguson ("Plaintiff") has filed a Response  (ECF No. 57),

and Defendants have filed a timely Reply.  (ECF No. 67.)  The district court and

appellate background of this matter is addressed below at page 5 of this Order.

     Having reviewed the relevant materials, and for the reasons that follow,

Defendants' Motion for Summary Judgment is denied.[1]

## INTRODUCTION

     This is a prisoner civil rights suit: it involves a prisoner's alleged urgent need to

medical care.  Plaintiff alleges that Defendants violated his Eighth Amendment right to

be free from cruel and unusual punishment.  (ECF No. 1 at 6.)  Plaintiff brings this claim

---

[1] The Court previously dismissed putative Defendant Barry Goldsmith, M.D. on
September 9, 2011 in its Order on Order to Show Cause, ECF No. 82, pursuant to Plaintiff's
Response to the Order to Show Cause, ECF No. 80.

for relief against Defendants in their individual capacities under 42 U.S.C. § 1983.

Defendants move for summary judgment as to Plaintiff's claim, and also assert that they

are entitled to a defense of qualified immunity.  (ECF No. 34 at 17.)

## I. BACKGROUND

### A.    Factual Background

On the instant Motion for Summary Judgment, the Court must view the facts in

the light most favorable to Plaintiff.  *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir.

2010).  Relevant background facts include:

Plaintiff was an inmate housed at the Sterling Correctional Facility ("SCF").

Defendant Webster was a Physicians Assistant at SCF, and Defendant Dowis was the

Health Services Administrator.  (ECF No. 34 at 2 ¶ 1.)  Plaintiff was housed at SCF from

July 3, 2007 to May 6, 2008 with a brief time at the Larimer County Jail between

January 25, 2008 and February 6, 2008 to make court appearances.  (*Id.* at 2 ¶ 2, 4 ¶

18.)

As Health Services Administrator, Dowis was to ensure inmates had *unimpeded

access to medical services.*  (ECF No. 57 at 2 ¶ 3.)  (emphasis added.)  Dowis's

position requires "accountability on all aspects of medical, dental, mental health and

rehabilitation services."  (ECF No. 57 at 2)  Dowis is required to "ensure operational and

administrative compliance with DOC Administrative Regulations, Clinical Standards and

Procedures…."  (*Id.*)  She is also responsible for ensuring that staff comply with all

information systems requirements including "referrals and consultations."  (*Id.* at 2.)

On December 4, 2007, Plaintiff submitted a "kite"[2] asking for medical attention due to concern about his left arm and leg, and indicating that he felt paralyzed.  (*Id.* at 3 ¶ 12.)  Plaintiff submitted further kites on December 6 and 11, 2007 related to the pain and weakness in his left arm and leg.  (ECF No. 34 at 3 ¶ 12.)  In addition to stating that he felt paralyzed, Plaintiff raised the concern on December 11 that he had suffered a stroke, leading to symptoms of numbness in his left side.  (ECF No. 57-2 at 2.)  These symptoms are well illustrated in the following kite, dated December 6, 2007:

> "I'm having serious problems with my left arm and left leg. I'm having severe pains shooting down the left side of my neck down my arm. I can hardly pick anything up with my left hand. I can barely walk. Its hard to lift my left leg. Can't move my foot or toe."

(ECF No. 57 at 3.)

On December 14, 2007, Defendant Webster examined Plaintiff.  (ECF No. 34 at 3 ¶ 12.)  Webster documented the examination as essentially normal with some muscle tenderness and recommended that Plaintiff limit exercise activity.  (Webster Dep., ECF No. 34-5 at 54:4-9.)  Plaintiff, however, alleges that he was taken to this appointment in a wheel chair, and that he could hardly move his left leg during the examination.  (Ferguson Aff., ECF NO. 57-2 at 1-2 ¶ 5.)  Plaintiff further alleges that he informed Webster that he had not been exercising and that his complaint must have resulted from some other cause.  (*Id.*)[3]

---

[2] A "kite" is a form used by inmates to request medical attention.  (ECF No. 34 at 2-3.)

[3] Upon further review of the parties' briefs, the Court further notes that there are forty-nine asserted facts in Defendants' Statement of Facts.  At least half of those asserted facts were disputed by Plaintiff.  In addition, Plaintiff asserted a further twenty-three facts in his Response that put further distance between the factual narratives of the parties.  (*See generally* ECF No. 34; ECF No. 57.)

On January 16, 2008, Plaintiff submitted another kite with a similar complaint of pain and weakness on his left side.  (ECF No. 34 at 4 ¶ 16.)  Plaintiff was called to the clinic on January 19, but refused to go because he did not want to be seen by a nurse. (*Id.*; ECF No. 34-4 at 17.)

On January 24, 2008, during a routine mental health check, the psychiatrist noted a left foot drop and referred Plaintiff for a medical examination.  (ECF No. 34 at 4 ¶ 17; ECF No. 34-4 at 18; ECF No. 57 at 5 ¶ 17.)

After returning from the Larimer County Jail, Plaintiff saw Defendant Webster on February 8, 2008.  (ECF No. 34 at 5 ¶ 20.)  Webster documented that Plaintiff stated his gait was improving.  (ECF No. 34-4 at 21.)  Webster found the pain was more of a stiffness, and prescribed an anti-inflammatory medication.  (*Id.*, ECF No. 34 at 5 ¶ 21.) Plaintiff alleges, however, that he did not report an improved gait but that Plaintiff instead described pain from the foot through the knee on the left side.  (ECF No. 57 at 6 ¶ 21.)  Plaintiff alleges that his complaints were again ignored during this examination. (*Id.*)

On February 12, 2008 Plaintiff again submitted a kite, requesting medical attention due to a possible stroke.  (ECF No. 34 at 5 ¶ 22.)  On February 19, 2008, however, when Plaintiff was scheduled for an examination, Plaintiff once again refused to visit the clinic because he wanted to see a physician.  (ECF No. 57 at 6 ¶ 22.)

During an examination on March 25, 2008, Webster measured Plaintiff's left thigh, and noted that the left thigh was smaller than the right.  (ECF No. 34 at 5-6 ¶¶ 24-25.)  Webster ordered x-rays of the lumbar spine and an electromyogram ("EMG") due to decreased dorsiflexion on Plaintiff's left side and because of the measurement

discrepancy.  (*Id.* at 6 ¶ 25-26.)  Plaintiff did not see Webster further.  (*Id.* at ¶ 27.)

Following the x-rays and EMG, Plaintiff was seen by a neurologist and others who ultimately diagnosed Plaintiff with multiple sclerosis ("MS").  (*Id.* at 6-9.)  Plaintiff's neurologist, H. Rai Kakker, M.D., ultimately recommended the following treatment: "(1) The following additional blood work is advised: sed rate, ANA, lupus panel, vasculitis panel including p-ANCA and c-ANCA, and lyme disease titer. (2) Lumbar puncture is advised with routine tests as well as MS panel. (3) Following the lumbar puncture, the patient should undergo Solu-Medrol 1 g IV to be infused for two hours daily for five days followed by steroid taper. (4) The patient may start Betaseron therapy and slowly escalate dose following lumbar puncture and steroid therapy." (ECF 57-3 at 13.)

Plaintiff has since received treatment and physical therapy for MS.  (*Id.*)

## B.    Procedural Background

On December 11, 2009, Plaintiff filed this action.  (ECF No. 1.)  Defendants subsequently filed an answer to the complaint on February 22, 2010.  (ECF No. 6.)  On January 31, 2011 Defendants filed the present Motion for Summary Judgment.  On September 22, 2011, this Court denied Defendant's Motion for Summary Judgment ("Order") as to Eighth Amendment claim under 42 U.S.C. § 1983.  (ECF No. 34.)  Defendant's appealed the Order to the Tenth Circuit.  On August 17, 2012 the Tenth Circuit entered its order reversing and remanding the case to this Court

## II. STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). In contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001)

The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).   In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Although this Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir.2009).

### III. ANALYSIS

Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of qualified immunity is to "protect public officials from spending inordinate time and money defending erroneous suits at trial." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to satisfy a two-part test. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right [the "violation prong"].[4] Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated, were clearly established at the time of the conduct at issue [the "clearly established prong"]." *Nelson v. McMullen,* 207 F.3d 1202, 1206 (10th. Cir. 2000). Only if the plaintiff makes this two-part showing does the burden then shift back to the defendant to demonstrate "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.*

---

[4] It is worth noting that with respect to the violation prong, a plaintiff must show that the defendant's actions deprived him or her of a constitutional or statutory right. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). This "threshold inquiry" is akin to the standard on summary judgment—*i.e.*, "taking all facts in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?" *Smith v. Nichols*, 2011 WL 996871, at *4 (D.Colo. Mar. 18, 2011) (citing *Saucier*, 533 U.S. at 201; *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004).

In the instant matter, Defendants move for summary judgment.  They argue that Plaintiff cannot establish a *prima facie* claim against Defendants for violation of his Eighth Amendment rights.  Defendants also move for summary judgment on the basis that even if a claim can be demonstrated, that Defendants are entitled to qualified immunity.  Because the qualified immunity analysis itself involves an assessment of whether a Plaintiff has come forward with sufficient evidence to show a *prima facie* claim, the two contentions will be considered together.  *Smith*, 2011 WL 996871, at *4 (citing *Saucier*, 533 U.S. at 201)**.**

**A.      Whether Defendants' Actions Violated a Constitutional Right**

The Eighth Amendment protects against the infliction of "cruel and unusual punishment."  U.S. Const. Amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle* , 429 U.S. at 104–05.

The elementary principles of dignity, civility, humanity, and decency "establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most

immediate concern to the drafters of the [Eighth] Amendment." *Id.* at 103.

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted); *see also Self*, 439 F.3d at 1230-31.  In other words, the plaintiff must establish that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

1.    Defendant Webster

To defeat Webster's Motion for Summary Judgment, Plaintiff must satisfy the two prong inquiry to make out a *prima facie* case.  Based on the reasons that follow, the Court finds that Plaintiff succeeds on both.

Turning to the objective prong, the Court finds that this prong is satisfied because there are sufficient facts in the record to show factual disputes regarding the seriousness of Plaintiff's medical condition. *Ramos* 639 F.2d at 575 (stating that a

medical condition is serious if it is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention")

First, there is evidence in the record that Defendant Webster knew of Plaintiff's allegations of paralysis and stroke from the Kite Log.  (ECF No. 57-2 at 2.)  Among other things, those kites expressly stated that Plaintiff was "having serious problems [with his] left arm and left leg."  (ECF No. 57 at 3.)  The kites further indicated that Plaintiff was suffering from "severe pains shooting down the left side of [his] neck" and that he could "hardly pick up" anything with his left hand.  (*Id.*)  This evidence raises the question of whether Webster should have referred Plaintiff to a physician for diagnosis and treatment given the seriousness of the Plaintiff's symptoms.

Second, and despite Webster's medical report to the contrary, Plaintiff contends that he had not been exercising at the time he was seen by same, and had no intention of doing so because of the sharp pains shooting down the left side of his body.  (*Id.*)  This allegation is supported by evidence that Plaintiff entered the clinic in a wheelchair. Plaintiff further alleges that Webster saw this, which conflicts with evidence that he was exercising at the time of Webster's diagnosis and was merely suffering from strained muscles.  (Ferguson Aff., ECF No. 57-2 at 12-13 ¶ 5.)

Third, Plaintiff points to opinion evidence by Jonathan H. Woodcock, M.D.  (ECF No. 57-4.)[5]  His opinion indicates "the potential seriousness" of Plaintiff's symptoms, and

---

[5] The Court notes that while the evidence of Dr. Woodcock is not required to satisfy this prong; it does reinforce the result against Defendant Webster, and provides further context as to the symptoms that Plaintiff was suffering from in early December 2007.

the fact that they "would be quite obvious on examination to any competent medical evaluator."  (ECF No. 57-4 at 9.)[6]   The expert concludes that Plaintiff's condition "could not reasonably be attributed to 'pulling a muscle' as noted in Mr. Webster's  [report]." (*Id.*)  Tellingly, in Defendant's Reply Brief, Defendants "admit that the [Woodcock] opinion supports" Plaintiff's contention that he disagreed with the medical treatment he received from Webster.  (ECF No. 67 at 8.)  This admission goes directly to the seriousness of Plaintiff's medical needs, and demonstrates facts in dispute that are relevant to his Eighth Amendment claim.

Because of the admission, and also for the reasons above, it is difficult to see how Webster could succeed on summary judgment.  The Court finds that because of the conflicting evidence between Plaintiff and Webster, summary judgment is not warranted with respect to the objective prong. *Ramos* 639 F.2d at 575.

Plaintiff also proffers facts to support the subjective prong.  Specifically, the Court finds that there are sufficient facts in the record—for the purposes of showing Webster's requisite state of mind—because the symptoms of numbness in Plaintiff's left side, *inter alia*, would allow a jury to determine whether Defendant was deliberately indifferent to such symptoms by not informing a more qualified professional (a neurologist) of same. (ECF No. 34-4 at 18; Ferguson Aff., ECF No. 57-2 at 12-13 ¶ 5.)  This evidence is material to Webster's knowledge and causation—*i.e* whether he knew that Plaintiff

---

[6] Among other things, Dr. Woodcock said that as a "result of the delay in treatment, Plaintiff's' disease progressed much more and much faster than it would have otherwise. He now has impairments which are greater than they would have been otherwise."  (ECF No. 57-4 at 7.)  This further demonstrates the seriousness of the disease, and the inadequate measures that Webster took at the time the symptoms came to his attention in early December 2007.

faced a substantial risk of harm and disregarded that risk, by failing to take "reasonable measures to abate it." *Callahan*, 471 F.3d at 1159; *Mata,* 427 F.3d at 753; *see also Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000)  (noting that one type of deliberate indifference is evidenced "when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment ").

Given that Plaintiff was *not* diagnosed with MS until March the following year, there are also sufficient facts to show Defendant Webster delayed in providing medical treatment.  This delay is open for a fact-finder to assess whether it caused unnecessary pain or a worsening of Plaintiff's condition.  Indeed, the fact-finder could well find that such delay constituted reckless indifference to Plaintiff's Eighth Amendment Rights. *DeSpain v. Uphoff*, 264 F.3d 965, 977 (10th Cir.2001).   Accordingly, the Court finds that Plaintiff has also satisfied his burden with respect to the subjective prong. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

In sum, genuine disputes of material fact exist as to Webster's knowledge of Plaintiff's symptoms, what those symptoms were, the veracity of Plaintiff's complaints while being examined by Webster, and the level of pain being experienced by Plaintiff. In these circumstances, summary disposition of Plaintiff's Eighth Amendment claim is not appropriate and will be denied to the extent that it applies to Webster's violation of Plaintiff's Eighth Amendment Rights to medical care. *DeSpain*, 264 F.3d at 977 (denying summary judgment because allegations going to severity and knowledge are factual disputes that must be left to the province of the fact-finder.)

2.    Defendant Dowis

A supervisor is liable under § 1983 if an "affirmative link exists between the constitutional deprivation, and the supervisor's personal participation, his exercise of control or direction, *or* his failure to supervise." *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir.1997)*; Meade v. Grubb*, 841 F.2d 1512, 1527 (10th Cir. 1988).  Typically, there must be evidence of participation, control *or* acquiescence in the alleged constitutional deprivations through actions or omissions which create a substantial risk of harm.  *Meade,* 841 F.2d at 1528; *Green*, at 108 F.3d at 1302*; Langley v. Adams Cnty,* 987 F.2d 1473, 1481 (10th Cir.1993)*.*

Plaintiff argues that Dowis is liable for the unconstitutional implementation of an unconstitutional policy within the Sterling Correction Facility.[7]  (ECF No. 57 at 8-9, 19). To succeed, he must demonstrate (1) that Dowis promulgated, created, implemented or possessed responsibility for the continued operation of a policy (2) that Dowis's policy caused constitutional harm, and (3) that Dowis acted with the state of mind required to establish the alleged constitutional deprivation.[8]  *Summum v. City of Ogden*, 297 F.3d

---

[7] A supervisor may be liable even if s/he does not directly participate in the wrongdoing. The Supreme Court has held that municipal liability may be imposed under § 1983 when a written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988). This same logic applies when a plaintiff sues a supervisor who promulgates, implements, or possesses responsibility for the continued operation of a policy or custom that itself violates federal law. *Meade*, 841 F.2d at 1528; *Anthony v. Baker*, 767 F.2d 657, 666 (10th Cir.1985); *Green* 108 F.3d 1296 (holding that there "was a showing of the warden's alleged deliberate indifference and of an affirmative link between the constitutional deprivation and the warden's improper control and failure to supervise").

[8] As in all § 1983 Claims, a plaintiff must show that defendant acted under the color of the law.  That is not meaningfully disputed by the parties in this case. Even if it were, the Court would find for Plaintiff based on Defendants' positions at SCF.

995, 1000 (10th Cir. 2002); *Meade*, 841 F.2d at 1528 (holding that a supervisor "is accountable in a § 1983 action whenever a sheriff, in a position of responsibility, knew or should have known of the misconduct, and yet failed to prevent future harm.")  *Berry v. City of Muskogee*, 900 F.2d 1489, 1499 (10th Cir. 1990) (stating that officials may be held liable when their own acts, including their policies, practices and procedures, violate an inmate's Eighth Amendment rights, even if the offending policy, practice, or procedure is unwritten); *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1239 (10th Cir. 1999) (stating that an administrator normally must issue clear written policies and then teach subordinates how to implement them.)

        As to element (1)**,** Plaintiff contends that Dowis's implementation of a policy—which allowed nurses to rule out serious illnesses, such as stroke by looking through a "slot in a prison door"—violated Plaintiff's constitutional rights.  (ECF No. 57 at 19; *see also* Dowis Dep., ECF No. 57-1 at 72:12-19.)  Because of this policy, Plaintiff asserts that he was not afforded "unimpeded access to health care" since he was not "brought to the clinic to be assessed more thoroughly to evaluate the significance of [his] complaint."  (ECF No. 57 at 19; ECF No. 57-4 at 36.)   This, he claims, led to violation of his constitutional rights—*i.e.* delay and denial of his rights to emergent medical care.

        Based on the policies at SCF and the facts stated in the record, the Court sides with Plaintiff's position at this summary judgment juncture. The relevant factual predicate for this position—and the basis for the Court's holding—is outlined in the following facts and policies.

        Specifically, per *DOC Administrative Regulations, Clinical Standards and*

*Procedures* ("DOC policy"), any kite "that holds the possibility of an emergent health care warrants having the offender brought to the clinic to be assessed…. An emergent health care need would be anything that would . . .  have high lethal potential." (ECF No. 57-4 at 13. ) (emphasis added.)  One of the complaints most likely to be "life threatening" in the prison is "stroke/cerebral hemorrhage."  (*Id.* at 17.)

At the end of November, 2007, Plaintiff  experienced the sudden onset of sharp, stabbing pains on the left side of his head and down the left side of his neck.  (ECf No. 57 at 9.)  The pain also went around the left side of his upper back, shoulder and chest. His left arm went numb and he could barely move his fingers or pick anything up.  His left leg also went numb and he had trouble moving his left foot.  He told the guards he needed to see medical, saying "please get me to medical." (*Id.*)  These symptoms were expressly noted in the several kites that were submitted to the SCF.

In deposition testimony, and in response to Plaintiff's urgent pleas for medical care, Defendant Dowis said:

> "The nurses may have gone down and looked at him [Plaintiff] . . .  That's not uncommon, especially in segregation.  It's not uncommon for them to stand at the door and talk to them and reassure them that, you will be seen soon."

(Dowis Dep. (ECF No. 57-1 at 19:7:12.)  However, as the facts reveal, Plaintiff was not seen at the clinic for a further ten days after submission of his original kite. That kite, among others, indicated stroke-like symptoms which is expressly regarded in the prison system policy as a "life threatening" complaint.  (ECF No. 57-4 at 13-17.)  Indeed, it was not until the fourth kite that he finally received medical attention *at the clinic* in accordance with DOC policy. (emphasis added.)

Because of these facts, the Court finds that there is sufficient evidence for a reasonable juror to conclude that Dowis implemented unconstitutional policies that delayed Plaintiff's urgent medical care.  More specifically, a reasonable juror could find: (a) Dowis implemented an alternative policy to that stated in DOC policy (that permitted nurses to determine serious medical needs from a prison cell, as opposed to the clinic which was what was required in the policy), or (b) Dowis knowingly ignored and failed to train nurses, to ensure that prisoners with serious medical needs were brought to the clinic without delay.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970) (stating that a plaintiff may be able to prove the existence of a practice that, although not authorized by express policy, is "so permanent and well settled as to constitute a custom or usage"); *see also Langley*, 987 F.2d at 1481; and *Green*, 108 F.3d at 1302.

As such, Plaintiff has supplied sufficient facts as to Dowis to satisfy the first element of his *prima facie* claim for the purposes of summary judgment.

As to element (2), Plaintiff contends that Dowis caused Plaintiff constitutional harm by not providing him with medical attention at the clinic after he had submitted urgent kites to the SCF reflecting symptoms of stroke.  Specifically, Plaintiff asserts that Dowis caused him harm through implementation of an unconstitutional policy that denied him access to medical attention for serious medical needs at the SCF clinic. (ECF No. 57 at 19.)   For the purposes of summary judgment, the Court agrees with Plaintiff's position; especially since there is evidence to show that Dowis exercised direction over SCF policies, and/or failed to train subordinates to schedule appointments in the clinic based on urgent symptoms, such as those described in Plaintiff's submitted kites. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998) (stating that when an

-16-

official policy itself violates federal law, issues of culpability and causation are straightforward.)

Accordingly, the Court finds that there are sufficient facts in the record to allow Plaintiff to meet element (2) of his *prima facie* case.

Finally, and turning to element (3), Plaintiff has also satisfied this requirement for the purposes of summary judgment.  Specifically, the Court finds that a reasonable juror could conclude that Defendant Dowis either knew or ought to have known that by implementing a policy—that prevented a prisoner from being assessed at the clinic—could have created a substantial risk of harm.  *Meade,* 841 F.2d at 1528.  Being in the supervisory position that Defendant Dowis was, the Court infers that she would have been cognizant of DOC policy: if not, there is a real concern that Defendant Dowis could be accused of abrogating her responsibilities of her position.  Dowis, therefore, cannot have it both ways: she cannot hold the position of control and oversight that her position demands on the one hand; and then seek to shy away from those very responsibilities that are required of the position, on the other.[9]

As such, the Court has little difficulty in finding an affirmative link between the deprivation of Plaintiff's right to urgent medical care, and Dowis's position of control at the SCF.  Because of this affirmative link, and because of the plentiful material facts in the record, there is more than enough evidence from which a jury could conclude that Dowis acted with deliberate indifference to Plaintiff's constitutional rights through

---

[9] Dowis's job own description indicated that she would "provide operational and supervisory oversight . . .  for all DOC Administrative Regulations, Clinical Standards and Procedures, American Correctional Association Standards, State/Federal Statutes, State Licensing/Credentialing and Regulatory Board standards."  (ECF No. 57-1 at 2-3.)

implementation of an unconstitutional policies and/or through her failure to train staff to attend to urgent medical needs. *Green,* 108 F.3d at 1302 (stating that a supervisor's liability under § 1983 "must be predicated on the supervisor's deliberate indifference" and a plaintiff "must show that an 'affirmative link' exists between the [constitutional] deprivation and the supervisor's . . . exercise of control or direction, or failure to supervise.")

Accordingly, the Court finds that Plaintiff has satisfied his burden for the purposes of summary judgment on the first prong of Defendant Dowis's qualified immunity affirmative defense.

**B.   Whether the Plaintiff has Shown Violation of a Clearly Established Right**

As to each Defendant, the Court next turns to the second prong of the qualified immunity analysis—violation of the a clearly established right.   To demonstrate clearly established law, there must be a "Supreme Court or Tenth Circuit decision on point." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (stating also that this may include clearly established law from other circuit courts that place the defendant on notice of the relevant law); *see also Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (stating that the facts on point need *not* be identical to those in suit). (emphasis added.)

**1.   Defendant Webster**

Plaintiff asserts that Defendant Webster denied and delayed timely medical care to Plaintiff—*i.e.*, he claims that Webster delayed timely medical care from a specialized neurologist that would ultimately diagnose Plaintiff's MS condition (several months after submission of his initial kite).

As established in the case law, the denial or delay of access to medical care violates a prisoner's constitutional rights under the Eighth Amendment. *Estelle*, 429 U.S. at 104; *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001); see also *Garrett v. Stratman*, 254 F.3d 946, 950, FN 4 (10th Cir. 2001) and *Sealock* 218 F.3d 1210 (stating that deliberate indifference may be evidenced where prison officials deny a prisoner access to medical personnel capable of evaluating the need for treatment).

In light of these authorities, the Court finds that Defendant Webster is not entitled to qualified immunity because it was clearly established in early December 2007 that Plaintiff had a constitutional right to treatment for serious health needs without delay. Moreover, there are sufficient facts in the record from which a reasonable juror could conclude that a reasonable medical official in Defendant Webster's position, should or would have understood that he was violating Plaintiff's rights to necessary heath care required because of the severity of his symptoms, particularly given the delay in Plaintiff ultimately receiving the medical attention he required for MS (some 3-4 months later).

In addition, and as the Court has found earlier, there are also disputed material facts as to the seriousness of Plaintiff's symptoms in December 2007.  This evidence is proffered by both Plaintiff and Dr. Woodcock (an expert in neurology).  In particular, Dr. Woodcock's opinion sides with Plaintiff's factual narrative; a narrative that conflicts with Defendant Webster's narrative and provides factual context for the clearly established prong as to whether an official (in Webster's position) violated Plaintiff's constitutional rights by denying or delaying the requisite medical care.  *See Bowling* 584 F.3d at 964 ("Our inquiry into whether a constitutional right was clearly established must be undertaken in light of the specific context of the case.")

The Court, therefore, finds that Plaintiff has satisfied his burden with respect to this prong.  And to the extent that there are specific facts and context that inform the clearly established analysis, the Court notes that it has adopted the factual narrative proffered by Plaintiff.  Accordingly, Plaintiff has satisfied its burden in showing that Defendant Webster is not entitled to qualified immunity in this case because the first prong (addressed earlier) and second prong have been met for the purposes of summary judgment—*i.e.* Defendant Webster violated a clearly established right.[10]

### 2.  Defendant Dowis

Because Defendant Dowis has also asserted qualified immunity, Plaintiff is entitled to proceed in this action only if the constitutional violation alleged against Dowis was clearly established at the time of the relevant events.  *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir.2010); *Harris*, 273 F.3d at 931 (stating that the facts on point need not be identical to those in suit). s*ee also Hope v. Pelzer*, 536 U.S. 730, 741 (2002);  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (stating that the Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.")

 Plaintiff asserts that Defendant Dowis violated his constitutional rights in her

---

[10] Under ordinary circumstances, a court may apply the legal standard after the jury has done the necessary fact-finding—and this could well occur in this case through use of special interrogatories at trial—but in most cases at the summary judgment stage "the dispute will lie over the nature of the specific job involved, and such factual determinations will resolve the case." *Horton v. Taylor*, 767 F.2d 471,478 (8th Cir. 1985).

supervisory capacity by directing and implementing unconstitutional policies at the SCF—*i.e.* he was denied medical diagnosis for serious stroke-like symptoms at the SCF clinic.  There is also evidence to show that Defendant Dowis is liable for failing to train nursing staff to timely schedule prisoner appointments at the clinic when serious medical emergencies arose.  (ECF No. 57 at 19-20.)  Plaintiff asserts that Dowis's actions or omissions denied him emergency medical care in violation of clearly established constitutional rights to such care.  Tenth Circuit cases that clearly establish supervisory liability include, *Meade*, 841 F.2d at 1528 (holding that  supervisor may be held liable where there is failure to train, or training that is so reckless or grossly negligent so to create substantial harm), and *Berry*, 900 F.2d at 1499 (finding that although neither the City nor any of its employees or agents actually caused the death of Berry, the Court found that there was sufficient evidence to which "a jury reasonably could conclude that the city's conduct was the moving force in bringing about the constitutional violation") *see also Green*, at 108 F.3d at 1302 ( holding that there was a "showing of the warden's alleged deliberate indifference and of an affirmative link between the constitutional deprivation and the warden's improper control and failure to supervise"); *Langley*, 987 F.2d 1473 (holding that "supervisory liability requires 'allegations of personal direction or of actual knowledge and acquiescence"); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002);  *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1239 (10th Cir. 1999) (stating that an administrator normally must issue clear written policies and then teach subordinates how to implement them.)

Here, and irrespective of what theory Plaintiff proceeds on—*i.e.* Defendant's unconstitutional policy (control) or failure to train—there is sufficient case law for the Court to find, as this stage of the proceedings, that a clearly established right was violated because of Defendant Dowis's policy action or inaction.[11]  Viewing the facts in the light most favorable to Plaintiff, the Court finds that it should have been apparent for the purposes of summary judgment, and in light of pre-existing law, to a reasonable official in Dowis's position that in failing to adhere to applicable policies, she violated Plaintiff's right to urgent medical care and created a situation where there was potential for substantial risk of harm.[12]   *Casey*, 509 F.3d at 1284

Because Plaintiff provides sufficient evidence for a claim that Dowis violated his clearly established constitutional rights, Defendant Dowis is not entitled to qualified immunity at this juncture of the proceedings.

## C.     Burden Shift Back to Defendant: Whether Defendants are Entitled to Judgment as a Matter of Law

 Given that Plaintiff has made it two-part showing as to the qualified immunity analysis above, the "burden shifts back to [Defendants] to demonstrate "that there are no genuine issues of material fact and that he or she is entitled to

---

[11] Constitutional issues are invariably questions of mixed fact and law. This is particularly acute when  factual determinations exist. *Foremaster v. City of St. George*, 882 F.2d 1485 (10th Cir. 1989) (finding whether a city's logo depicting the local Mormon temple violated the establishment clause turned on a determination of how a reasonable person would react in viewing the logo, and so was a question for the jury.)

[12] The disputed facts as to these theories have been addressed at length earlier, and while the clearly established prong is very much a legal question; specific facts relevant to the reasonable officer analysis (in Dowis's position) further reinforces the result against her. *Saucier,* 533 U.S. at 202; *see also Bowling* 584 F.3d at 964 ("Our inquiry into whether a constitutional right was clearly established must be undertaken in light of the specific context of the case.")

judgment as a matter of law." *Nelson,* 207 F.3d at 1206

Here, and because of the clear factual disputes in the record, the Court finds that neither Defendant Webster nor Defendant Dowis can discharge their burden to show that they are entitled to judgment as a matter of law.  Whether it be facts going to objective or subjective prongs of Defendant Webster's violation; or facts going to the *prima facie* case to establish supervisory liability against Defendant Dowis, the Court finds that these facts are heavily disputed by the parties, and that this factual dispute precludes summary disposition of this case.

Accordingly, the Court finds that summary judgment is not warranted under Rule 56, and that Defendants, therefore, are not entitled to judgment as a matter of law. *Cf. Nelson,* 207 F.3d at 1206.

## CONCLUSION

For the foregoing reasons, it is therefore ORDERED that Defendants' Motion for Summary Judgment, ECF No. 34, is DENIED in its entirety.

Dated this 5th day of February, 2013.

BY THE COURT:

William J. Martínez
United States District Judge

-23-